IN THE
UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

| | |
|---|---|
| ABIGAIL STRUBEL, <br><br> *Plaintiff-Appellant*, <br><br> v. <br><br> COMENITY BANK, <br><br> *Defendant-Appellee*. | No. 15-528 |

**MOTION OF *AMICUS CURIAE* CONSUMER FINANCIAL PROTECTION BUREAU FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**

  The Consumer Financial Protection Bureau respectfully moves for leave to submit the attached *amicus curiae* brief in response to this Court's order of May 17, 2016, which directed the parties to address the effect of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (May 16, 2016). The Bureau previously sought and was granted leave to file a supplemental amicus brief in response to this Court's order of November 20, 2015, which also sought supplemental briefing on plaintiff's standing. *See* Order of December 4, 2015. The Bureau's prior brief focused on the question of the plaintiff's statutory standing under the Truth in Lending Act

1

(TILA), 15 U.S.C. § 1640. *See* CFPB Br. (filed Dec. 31, 2015). As the Bureau explained in that context, private actions under § 1640 "provide an important supplement to the Bureau's authority to enforce TILA. *See* 15 U.S.C. §§ 1604(a), 1607(a)(6)." *Id.* at 1.

The Bureau has a similar interest here. Congress recognized that governmental enforcement efforts alone may not be sufficient to detect and deter statutory and regulatory violations that could occur in the multitude of credit transactions that are subject to TILA. Accordingly, Congress enacted 15 U.S.C. § 1640, which provides a private cause of action against "any creditor who fails to comply with any requirement imposed under" the substantive provisions of TILA "with respect to any person" and authorizes an award of actual damages and statutory damages under certain circumstances to successful plaintiffs. *See* 15 U.S.C. § 1640(a). An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts.

For these reasons, the Bureau respectfully requests leave to file the attached letter brief as *amicus curiae* addressing the Article III standing issue raised in the Court's May 17, 2016 order.

In accordance with Local Rule 27.1(b), undersigned counsel for the Bureau confirms that he has notified the parties' counsel about this motion. Appellant

2

Strubel consents to this motion. Appellee Comenity Bank takes no position on this motion and reserves the right to file a response.

Dated: June 13, 2016          Respectfully submitted,

        /s/ Nandan M. Joshi

John R. Coleman
   *Assistant General Counsel*
Nandan M. Joshi
   *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7269 (telephone)
(202) 435-7024 (facsimile)
nandan.joshi@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*

ATTACHMENT

PROPOSED BRIEF OF AMICUS CURIAE
CONSUMER FINANCIAL PROTECTION BUREAU



1700 G Street NW, Washington, DC 20552

June 13, 2016

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:** *Strubel v. Comenity Bank*, **No. 15-528**

Dear Ms. Wolfe:

The Consumer Financial Protection Bureau (Bureau or CFPB) respectfully submits this *amicus* brief in response to the Court's order of May 17, 2016, which requested that the parties file supplemental letter briefs addressing the applicability of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), to this case. For the reasons set forth below, the Bureau urges the Court to conclude that Appellant Strubel has suffered a concrete harm sufficient to establish Article III standing.

**I. Interest of the Bureau**

The Bureau has a substantial interest in plaintiffs' standing under Article III to bring suit in federal court to assert their rights under the Truth in Lending Act (TILA or Act). The Bureau has the authority to promulgate rules that implement TILA, and the Bureau and various other federal agencies have authority to enforce the Act. *See* 15 U.S.C. §§ 1604(a), 1607(a). TILA also authorizes a consumer to bring private

actions and, in certain circumstances, to recover statutory damages from creditors who fail to comply with specified provisions of the Act "with respect to" that consumer. *Id.* § 1640(a). An unduly narrow reading of Article III standing would limit consumers' ability to exercise the Act's private right of action and thereby weaken an important supplement to the Bureau's own enforcement efforts. The Bureau therefore has a substantial interest in the standing issue presented in this case.

## II. Strubel Has Article III Standing

1. In *Spokeo*, the Supreme Court reaffirmed the well-established principle that a plaintiff invoking the jurisdiction of an Article III court must establish "injury in fact." *Spokeo*, slip op. at 6. In particular, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *Spokeo* also reaffirms the longstanding principle that the required "legally protected interest" may be an interest to which Congress has granted legal protection by creating a statutory right. *See id.* at 9 (reaffirming that "Congress may 'elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law'" (quoting *Lujan*, 504 U.S. at 578) (alteration omitted)); *accord Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing" (quotations omitted)). Nonetheless, the invasion of such a statutory right will not "automatically" satisfy the

"injury-in-fact requirement"; the fact that Congress has "grant[ed] a person a statutory right and purports to authorize the person to sue to vindicate that right" is not necessarily enough. *Spokeo*, slip op. at 9. For example, a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 9-10. Rather, the invasion of a statutory right must itself be "concrete and particularized" and "actual or imminent." *Id.* at 7.

A particularized injury is one that "affect[s] the plaintiff in a personal and individual way," *id.* at 7 (quotations omitted), while a "concrete" injury is one that is "*de facto*," *id.* at 8. That is, to be "concrete," the injury must "actually exist"; it must be "real," not "abstract." *Id.* A concrete injury need not be tangible, however. *Id.* at 8-9. An intangible injury can also be concrete. *Id.* at 9. In assessing whether an intangible injury is sufficiently "concrete," the Court recognized that "Congress is well positioned to identify intangible harms that meet minimum Article III requirements" and, thus, that "its judgment is . . . instructive and important." *Id.*

2. Strubel has alleged that she suffered the invasion of a legally protected interest. In particular, Strubel has alleged that Comenity Bank failed to provide her with the account-opening disclosures required under TILA, 15 U.S.C. § 1637(a)(7), and the Act's implementing regulation, Regulation Z, 12 C.F.R. § 1026.6(b)(5). *See* Compl. ¶¶ 32-35. As explained in the Bureau's prior *amicus* brief in this case, CFPB Supp. Br. (CFBP Br.) at 2-4 (filed Dec. 31, 2015), TILA requires creditors to provide "the person to whom credit is to be extended" certain account-opening disclosures,

15 U.S.C. § 1637(a), and the Act authorizes such a person to recover actual and statutory damages from "any creditor who fails to comply with [that] requirement . . . with respect to [that] person," *id.* § 1640(a). Together, these provisions grant consumers like Strubel a legally protected interest in receiving certain information from creditors "[b]efore opening any account under an open end consumer credit plan," *id.* § 1637(a)—an interest that Comenity Bank allegedly invaded.

The invasion of this interest is both actual and particularized: Strubel alleges "actual" injury because she alleges that Comenity Bank in fact failed to provide her with the required disclosures. And that failure was particularized, because it "affect[ed] [Strubel] in a personal and individual way," *Spokeo*, Slip op. at 7; Comenity Bank failed to provide *to Strubel* the information that *she* was entitled to receive before opening *her* credit card account. The injury that Strubel alleges is personal to her and is not a "nonjusticiable generalized grievance." *See id.* at 8 n.7.

3. Comenity Bank's alleged failure to provide Strubel with the required account-opening disclosures also constitutes a "concrete" injury. The deprivation of a right to receive information to which one is entitled by law has long been recognized as a constitutionally sufficient injury-in-fact (that is thus necessarily sufficiently particular and concrete). For example, in *Public Citizen v. Department of Justice*, the Supreme Court recognized that a refusal to provide "the names of candidates [for federal judgeships] under consideration by the ABA Committee, reports and minutes of the Committee's meetings, and advance notice of future meetings . . . to the extent

[required by the Federal Advisory Committee Act (FACA)] constitutes a sufficiently distinct injury to provide standing to sue." 491 U.S. 440, 449 (1989). Likewise, the Court noted, "those requesting information under [the Freedom of Information Act (FOIA)]" need not "show more than that they sought and were denied specific agency records" to establish standing to sue. *Id.* Similarly, in *Federal Election Commission v. Akins*, the Court held that "[t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information . . . that, on [their] view of the law, the [Federal Election Campaign Act of 1971 (FECA)] requires that [an alleged political committee] make public." 524 U.S. 11, 21 (1998). So too here. Just like FACA, FOIA, and FECA grant individuals rights to certain information, TILA grants consumers a right to "[a] statement, in a form prescribed by regulations of the Bureau" of the consumer protections and creditor responsibilities set forth in the Fair Credit Billing Act (FCBA), 15 U.S.C. §§ 1666, 1666a, and 1666i. 15 U.S.C. § 1637(a)(7); *see also* 12 C.F.R. § 1026.6(b)(5)(iii); *see generally* CFPB Br. at 4-5. Strubel contends that Comenity Bank failed to provide the requisite "statement" required by TILA because the statement she received failed to disclose several important items of information about her rights and Comenity Bank's responsibilities. Under *Akins* and *Public Citizen*, the deprivation of her right to this information satisfies Article III's injury-in-fact requirement, including the requirement for the injury to be sufficiently particular and concrete.

*Spokeo* confirms, moreover, that a plaintiff who is denied information to which she is entitled need not allege or prove additional consequential harm to satisfy the requirements of Article III. Indeed, *Spokeo* identifies *Akins* and *Public Citizen* as demonstrating that plaintiffs in such a case "need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, slip op. at 10 (emphasis in original); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (holding that the violation of a person's right under the Fair Housing Act to "truthful information about available housing" satisfied Article III's "injury in fact" requirement even though the "tester" plaintiff "may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home"). Rather, as the Court in *Spokeo* recognized, in prior cases, the "voters' 'inability to obtain information' that Congress had decided to make public," *Spokeo*, slip op. at 10 (quoting *Akins*, 524 U.S. at 20-25), and the "failure to obtain information subject to disclosure under the Federal Advisory Committee Act," *id.* (citing *Public Citizen*, 491 U.S. at 449), were enough by themselves to satisfy the injury-in-fact requirement. It is not surprising, therefore, that the Supreme Court has addressed the merits of account-opening disclosure violations under TILA even where the consumers "did not contend that they had suffered any actual damages as a result of the alleged TILA violation." *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 209 n.7 (1981) (addressing 15 U.S.C. § 1638(a)(10)). In TILA, as in FACA, FOIA, and FECA, Congress exercised its "power to define injuries and articulate chains of

causation that will give rise to a case or controversy where none [may have] existed before," *Spokeo*, slip op. at 9 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). When a person suffers the injury that Congress defined—the inability to "obtain information which must be . . . disclosed pursuant to a statute," *Akins*, 524 U.S. at 21—the injury is concrete and Article III's injury-in-fact requirement is met.

Nor can there be any doubt that Congress has defined the failure to receive information required to be disclosed under TILA as an injury "giv[ing] rise to a case or controversy." *Spokeo*, slip op. at 9 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)). As the Court in *Spokeo* acknowledged, "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," and its judgment about what harms meet those requirements is accordingly "instructive and important." *Id.* at 9. Here, Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). The Act accomplishes that goal by "imposing mandatory disclosure requirements on those who extend credit to consumers in the American market." *Mourning v. Family Publ'ns. Serv., Inc.*, 411 U.S. 356, 363 (1973). Moreover, Congress specifically identified the FCBA disclosures at issue in this case as ones "which are of material importance in credit shopping," S. Rep. No. 96-73, at 17 (1979), by choosing to authorize statutory damages for

violations of Section 1637(a)(7)'s disclosure requirements. *See* 15 U.S.C. § 1640(a); *see also* CFPB Br. at 3. "This congressional intention cannot be overlooked in determining whether [Strubel has] standing to sue." *Havens Realty*, 455 U.S. at 373.

### III. Conclusion

For these reasons, the Court should hold that Strubel has Article III standing to pursue her TILA claims.

June 13, 2016

Sincerely,

/s/Nandan M. Joshi

Mary McLeod
   *General Counsel*
John R. Coleman
   *Assistant General Counsel*
Nandan M. Joshi
   *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7269 (telephone)
(202) 435-7024 (facsimile)
nandan.joshi@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*

No. 15-528

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on June 13, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 13, 2016 /s/ Nandan M. Joshi

Nandan M. Joshi
  *Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, D.C. 20552
(202) 435-7269 (telephone)
(202) 435-7024 (facsimile)
nandan.joshi@cfpb.gov
*Counsel for* Amicus Curiae
*Consumer Financial Protection Bureau*